UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

BRYCE WOOLF,

              Petitioner,

    v.

ANDREW SAUL,[1]
Commissioner of Social Security
Administration,

              Respondent.

Case No. 1:18-cv-00280-CWD

**MEMORANDUM DECISION
AND ORDER**

## INTRODUCTION

Currently pending before the Court is Bryce Woolf's Petition for Review of the

Respondent's denial of social security benefits, filed on June 20, 2018. (Dkt. 1.) The

Court has reviewed the Petition for Review and the Answer, the parties' memoranda, and

the administrative record (AR), and for the reasons that follow, will remand the decision

of the Commissioner for an award of benefits.

---

[1] Andrew Saul was sworn in as Commissioner of Social Security on June 17, 2019.
Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew Saul should be
substituted for Acting Commissioner Nancy A. Berryhill as the Respondent in this suit. No
further action needs to be taken to continue this suit by reason of the last sentence of section
205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## PROCEDURAL AND FACTUAL HISTORY

Petitioner filed an application for a period of disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-433, on November 4, 2014. This application was denied initially and on reconsideration, and a hearing was conducted on February 23, 2017, before Administrative Law Judge (ALJ) Michael Kilroy. After considering testimony from Petitioner and a vocational expert, ALJ Kilroy issued a decision on May 31, 2017, finding Petitioner not disabled. Petitioner timely requested review by the Appeals Council, which denied his request for review on April 27, 2018.

Petitioner timely appealed this final decision to the Court. The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the alleged disability onset date of August 15, 2012, Petitioner was thirty-seven years of age. Petitioner completed his GED and attended two years of college. Petitioner served five years in the Army as a crewman and received a medically-related discharge following a right ankle injury. His past relevant work experience includes work as a tractor-trailer truck driver, project engineer, and salesperson.

## SEQUENTIAL PROCESS

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, it must be determined whether the claimant is engaged in substantial gainful activity. The ALJ found Petitioner had not engaged in substantial gainful activity since his alleged onset

date of August 15, 2012.[2] At step two, it must be determined whether the claimant suffers from a severe impairment. The ALJ found Petitioner's degenerative disc disease of the lumbar and cervical spine; migraines; and right shoulder impairment severe within the meaning of the Regulations.

Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that Petitioner's physical impairments did not meet or equal the criteria for any listed impairment. The ALJ specifically considered whether the severity of Petitioner's physical impairments, considered singly and in combination, met or medically equaled the criteria of listings 1.02 (Major Dysfunction of a Joint) or 1.04 (Disorders of the Spine). (AR 18.) If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the claimant's residual functional capacity (RFC) and then determine, at step four, whether the claimant has demonstrated an inability to perform past relevant work.

In determining Petitioner's RFC, the ALJ found that Petitioner's impairments could reasonably be expected to cause the symptoms he alleged, but that his statements about the intensity, persistence, and limiting effects of his conditions were not entirely consistent with the medical evidence and other evidence of record. (AR 19.) As part of his evaluation of Petitioner's RFC, the ALJ discredited the Petitioner's VA disability

---

[2] Petitioner worked after his alleged disability onset date at a plastics plant in 2015. (AR 17.) However, the ALJ found that this was an unsuccessful work attempt, because Petitioner worked only three months at substantial gainful activity levels during the first quarter of 2015; worked below substantial gainful activity levels in the second quarter of 2015; and thereafter ceased work due to his impairments. (AR 18.)

rating; discounted the opinions of three examining physicians; and found Petitioner less than fully credible.

Petitioner was medically discharged from military service. On October 3, 2016, the VA determined that Petitioner's disability rating was 90%. The rating was based upon an assignment of disability as follows: 50% for migraine headaches; 10% radiculopathy, right lower extremity; 40% degenerative disc disease; and 10% radiculopathy, left lower extremity. (AR 21, 221-231.) The ALJ gave "limited weight" to the VA disability rating for three reasons: the standards used to determine VA disability differ from those used by the Social Security Administration; the issue of disability is reserved to the Commissioner; and, the VA disability rating did not provide specific functional limitations. (AR 21.)

Next, the ALJ considered the opinions of three examining physicians. Dr. Keri L. Jackson performed a consultative examination on August 2, 2016, at the VA's request and as part of the VA's compensation and pension review. (AR 815.) The ALJ gave "little weight" to the report prepared by Dr. Jackson, on the grounds that it overstated Petitioner's physical limitations. The ALJ relied upon the "mild to moderately severe" findings on Petitioner's MRIs, "predominantly mild physical signs," and mildly affected activities of daily living to discredit Dr. Jackson's opinion that Petitioner's lumbar and cervical pain restricted Petitioner from working more than four hours each day. (AR 21.)

Drs. Benjamin Blair and Michael O'Brien examined Petitioner in connection with a worker's compensation claim. The reports of Drs. Blair and O'Brien are dated February

27, 2013, March 15, 2013, May 1, 2014, and July 27, 2016. (AR 21; 919-938.) Dr. Blair was of the opinion Petitioner's prognosis was "guarded" due to chronic pain. (AR 923.) Dr. O'Brien's examination revealed limited and painful range of motion resulting in a restriction to sedentary work, and he was of the opinion Petitioner's migraines would cause Petitioner to miss work one or two days each month. (AR 933.)

The ALJ gave the opinions of Drs. Blair and O'Brien "some weight." But, the ALJ discounted the physicians' opinions because worker's compensation opinions use "different methods and standards" than do disability opinions, and Petitioner's activities of daily living suggested more functionality. However, the ALJ did incorporate Dr. O'Brien's opinion related to lifting, bending, and difficulty with overhead lifting into the RFC determination based upon Petitioner's right shoulder MRI and other "objective medical evidence." (AR 22.) The ALJ rejected Dr. O'Brien's opinions regarding Petitioner missing work, because "the record is minimal in terms of migraine treatment." (AR 22.)

Turning to Petitioner's credibility, the ALJ cited four reasons based upon his review of the evidence of record to discredit Petitioner's testimony about the frequency and severity of his physical pain symptoms: Petitioner's activities of daily living were inconsistent with total disability; medical records revealed improvement after surgery; Petitioner received minimal treatment from the VA for his migraines; and, medical records showed "generally only mild to moderately severe physical findings." (AR 19-20.)

**MEMORANDUM DECISION AND ORDER - 5**

Based upon his evaluation of the record as summarized above, the ALJ found Petitioner was not able to perform his past relevant work. If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate, at step five, that the claimant retains the capacity to make an adjustment to other work that exists in significant levels in the national economy, after considering the claimant's residual functional capacity, age, education and work experience. The ALJ determined Petitioner retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), but had the following exertional limitations:

> The claimant can walk and/or stand or some combination for four hours in an eight-hour workday. The claimant can sit for two hours at a time and seven hours in an eight-hour day. The claimant can perform overhead reaching occasionally with the right upper extremity and even then with only one pound or less in terms of lifting overhead. The claimant cannot crawl or climb ladders/ropes/scaffolds. The remainder of the claimant's postural activities can be performed occasionally. The claimant should avoid concentrated exposure to extreme cold and vibrations.

(AR 18-19.)

The vocational expert testified that an individual with the above RFC who missed more than two workdays in a month and required more than typical break periods would be unemployable. (AR 88.) However, the ALJ rejected that aspect of the vocational expert's testimony, and found at step five that Petitioner retained the RFC to perform the requirements of representative occupations such as router and routing clerk. (AR 23.) Consequently, the ALJ determined Petitioner was not disabled.

## STANDARD OF REVIEW

Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he not only cannot do his previous work but is unable, considering his age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports Petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that, if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

When reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility assessment is entitled to great weight, and the ALJ may disregard a claimant's self-serving statements. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Where the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be upheld as based on substantial evidence. *Matthews v. Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993).

## DISCUSSION

Petitioner argues the ALJ erred at steps three and four of the sequential evaluation. First, Petitioner asserts the ALJ did not consider whether Petitioner's migraines medically equaled a listing at step three. Second, Petitioner maintains the ALJ improperly evaluated the VA disability rating. Third, Petitioner contends the ALJ erred by rejecting the uncontradicted opinion of Dr. Keri Jackson. And last, Petitioner asserts the ALJ erred in assessing Petitioner's credibility. As a result, Petitioner argues the ALJ's RFC determination was not supported by substantial evidence.

Each of the alleged errors will be discussed in turn.

## 1.     Step Three – Listing Level Severity of Petitioner's Migraines

Petitioner argues the ALJ was required to consider whether Petitioner's migraines, a severe impairment, met or equaled the requirements of Listing 11.02 (Neurological Disorders - Epilepsy).[3] Petitioner contends that, by finding Petitioner's migraines constituted a severe impairment, the ALJ was obligated to consider whether migraines met or equaled a listed impairment, and he failed to do so. Respondent argues that

---

[3] The SSA revised the medical criteria for evaluating neurological disorders, with the final rule published July 1, 2016, effective September 29, 2016. Revised Medical Criteria for Evaluating Neurological Disorders, 81 Fed. Reg. 43,048-01 (July 1, 2016). *See also* 79 Fed. Reg. 10,636 (Feb. 25, 2014). The final rule is to be applied to new applications filed on or after the effective date of the final rule and to claims that are pending on or after the effective date. Revised Medical Criteria for Evaluating Neurological Disorders, 81 Fed. Reg. 43,048-01 (July 1, 2016). Petitioner's claim was pending after the September 29, 2016 effective date of the revisions to Listing 11.00, and therefore the ALJ was required to apply the revised medical criteria.
.

**MEMORANDUM DECISION AND ORDER - 9**

Petitioner had the burden to prove his migraines met or equaled Listing 11.02, and by failing to offer a plausible theory or otherwise allege his migraines met a listed impairment during the administrative hearing, he waived the right to do so. Thus, Respondent argues the ALJ did not err.

An impairment, or combination of impairments, is medically equivalent to a listing "if it is at least equal in severity and duration to the criteria of any listed impairment," considering "all evidence in [the] case record about [the] impairment(s) and its effects on [the claimant] that is relevant…." 20 C.F.R. § 404.1526(a), (c). Further, equivalence depends on medical evidence only; age, education, and work experience are irrelevant. *Id.* at § 404.1526(c). Finally and critically, "the claimant's illnesses 'must be considered in combination and must not be fragmentized in evaluating their effects.'" *Lester v. Chater*, 81 F.3d 821, 829 (9th Cir. 1995) (quoting *Beecher v. Heckler*, 756 F.2d 693, 694-95 (9th Cir. 1985)).

A claimant bears the burden of producing medical evidence that establishes all of the requisite medical findings that his impairments meet or equal a particular listing. *Bowen v. Yuckert,* 482 U.S 137, 146, n. 5 (1987). If the claimant is alleging equivalency to a listing, the claimant must proffer a theory, plausible or otherwise, as to how his combined impairments equal a listing. *See Lewis v. Apfel,* 236 F.3d 503, 514 (9th Cir. 2001).

Having found a claimant to have at least one severe impairment at step two, *see* 20 C.F.R. § 416.920(a)(4)(ii), step three of the evaluation process requires the ALJ to

consider whether a claimant has an impairment that meets or medically equals any listing

found at 20 C.F.R., Pt. 404, Subpt. P, App'x 1 (§§ 416.920(a)(4)(iii), 416.920(d); Listing

of Impairments, 20 C.F.R. § 416.925). *Dunlap v. Colvin*, No. 15-CV-02139-NYW, 2016

WL 5405208, at *6 (D. Colo. Sept. 28, 2016), *cited in Rader v. Comm'r of Soc. Sec.*, No.

2:17-CV-00131-CWD, 2018 WL 4087988, at *3 (D. Idaho Aug. 27, 2018).

"For cases at the Administrative Law Judge or Appeals Council level, the

responsibility for deciding medical equivalence rests with the Administrative Law Judge

or Appeals Council." 20 C.F.R. § 416.926(e)(3) (effective March 27, 2017). *See also* 20

C.F.R. § 416.926(b)(2) (effective March 27, 2017) (if an impairment is not described in

the Listing of Impairments, "we will compare your findings with those for closely

analogous listed impairments.").

The most analogous listing for determining medical equivalence for migraines is

Listing 11.02. *Rader v. Comm'r of Soc. Sec.*, No. 2:17-CV-00131-CWD, 2018 WL

4087988, at *3 (D. Idaho Aug. 27, 2018). When the ALJ issued his written determination

in May of 2017, Listing 11.02 provided:

> Epilepsy, documented by a detailed description of a typical
> seizure and characterized by A, B, C, or D:
>
> A. Generalized tonic-clonic seizures (*see* 11.00H1a),
> occurring at least once a month for at least 3 consecutive
> months (*see* 11.00H4) despite adherence to prescribed
> treatment (*see* 11.00C); or
>
> B. Dyscognitive seizures (*see* 11.00H1b), occurring at least
> once a week for at least 3 consecutive months (*see* 11.00H4)
> despite adherence to prescribed treatment (see 11.00C); or

C. Generalized tonic-clonic seizures (*see* 11.00H1a), occurring at least once every 2 months for at least 4 consecutive months (*see* 11.00H4) despite adherence to prescribed treatment (*see* 11.00C); and a marked limitation in one of the following:

    1. Physical functioning (*see* 11.00G3a); or
    2. Understanding, remembering, or applying information (*see* 11.00G3b(i)); or
    3. Interacting with others (*see* 11.00G3b(ii)); or
    4. Concentrating, persisting, or maintaining pace (*see* 11.00G3b(iii)); or
    5. Adapting or managing oneself (*see* 11.00G3b(iv)); or

D. Dyscognitive seizures (*see* 11.00H1b), occurring at least once every 2 weeks for at least 3 consecutive months (*see* 11.00H4) despite adherence to prescribed treatment (*see* 11.00C); and a marked limitation in one of the following:

    1. Physical functioning (*see* 11.00G3a); or
    2. Understanding, remembering, or applying information (*see* 11.00G3b(i)); or
    3. Interacting with others (*see* 11.00G3b(ii)); or
    4. Concentrating, persisting, or maintaining pace (*see* 11.00G3b(iii)); or
    5. Adapting or managing oneself (*see* 11.00G3b(iv)).

20 C.F.R. § Pt. 404, Subpt. P. App.1 part A2 (effective March 27, 2017).

The SSA's Programs Operations Manual Systems (POMS) sets forth multiple ways for the SSA to determine medical equivalence where the claimant has an impairment that is not described in the Listing of Impairments. POMS DI

24505.015(B)(2)(b).[4] POMS provides also the following requirements for use in determining medical equivalence for unlisted impairments. The ALJ should: (1) discuss the claimant's impairment, medical findings, and non-medical findings; (2) discuss the listing considered the most closely analogous listing; (3) compare the findings of claimant's impairment to the findings of the most closely analogous listing; (4) explain why the findings of the claimant's impairment are at least of equal medical significance to the most closely analogous listing; and (5) cite the most closely analogous listing. *Id*. at 24505.015(B)(6)(c).[5]

Of note, out of all of the unlisted impairments, the SSA used chronic migraines to provide an illustrative example of how the above rationale could be applied:

> A claimant has chronic migraine headaches for which she sees her treating doctor on a regular basis. Her symptoms include aura, alteration of awareness, and intense headache with throbbing and severe pain. She has nausea and photophobia and must lie down in a dark and quiet room for relief. Her headaches last anywhere from 4 to 72 hours and occur at least 2 times or more weekly. Due to all of her symptoms, she has difficulty performing her ADLs. The claimant takes medication as her doctor prescribes. The findings of the claimant's impairment are very similar to those of 11.02, Epilepsy, Dyscognitive seizures. Therefore, 11.02 is the most closely analogous listed impairment. Her findings are at least

---

[4] The current version of the POMS manual no longer contains DI 24505.015. *See* Program Operations Manual System (POMS), effective date July 19, 2019, https://secure.ssa.gov/poms.NSF/lnx/0424505000 (last visited September 20, 2019), Exhibit 1. However, the referenced section of the POMS manual, cited above, became effective March 29, 2017, and was in effect prior to the ALJ's May 31, 2017 written determination. A copy of the relevant section is attached as Exhibit 2.

[5] The current POMS section related to determining medical equivalency is POMS ID 24508.010. https://secure.ssa.gov/poms.NSF/lnx/0424508010 (last visited September 20, 2019), attached as Exhibit 3. The requirements are the same. POMS ID 24508.010(E)(2)(b).

of equal medical significance as those of the most closely analogous listed impairment. Therefore, the claimant's impairment medically equals listing 11.02.D.1.

POMS DI 24505.015(B)(7)(b), Second Example.[6]

Here, the ALJ failed to engage in any analysis of Listing 11.02 despite finding Petitioner's migraine headaches constituted a severe impairment. The ALJ need not discuss every listing. And, it may be harmless error if the ALJ neglected to discuss relevant evidence at step three provided the Court can confidently say "that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Williams v. Berryhill*, No. 2:16-CV-1026 BCW, 2018 WL 2234902, at *3 (D. Utah May 16, 2018) (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004)).

Here, however, based upon the record and the facts of this case, where the ALJ found Petitioner's migraine headaches to be a severe impairment, the Court concludes it was legal error for the ALJ to not to engage in an 11.02 equivalency analysis. *Williams*, 2018 WL 2234902 at *3; *Rader*, 2018 WL 4087988 at *4. The ALJ did not mention migraine headaches in his step three review. Instead, the ALJ limited his discussion solely to listings related to Petitioner's degenerative disc disease and shoulder impairment. (AR 18.)

---

[6] Headaches are no longer given as an example in POMS ID 24508.010. https://secure.ssa.gov/poms.NSF/lnx/0424508010 (last visited September 20, 2019), Exhibit 3. However, at the time of hearing and prior to issuance of the ALJ's written determination, headaches were given as an example in POMS ID 24505.015. *See* note 4, supra, Ex. 2.

The failure to recognize the applicability of Listing 11.02.D.1, especially considering the specific guidance provided by the POMS in effect at the time, is harmful error when reviewed alongside the available record evidence of Petitioner's migraine headaches. *Rader*, 2018 WL 4087988 at *5. On July 17, 2014, Petitioner sought a consultation with the VA physical rehabilitation medicine department. (AR 486.) He complained of chronic headaches. (AR 486.) Dr. Lynnsey Steward administered bilateral occipital nerve blocks for treatment of "cluster headache." (AR 487.) At a follow up visit on August 4, 2014, Petitioner described experiencing migraines as "occipital to frontal HA, pain in eyes, blurred vision, goes blind can't talk, jumbled, 2-4 per week occurring more recently." (AR 478.) Dr. Richard Lassere diagnosed "HA, Multifactorial, with migranous component," and prescribed Imitrex (Sumatriptan) to be taken as needed for headache pain. (AR 482.)

Oon August 2, 2016, Dr. Keri Jackson diagnosed Petitioner with migraines and migraine variants. (AR 827.) She noted Petitioner first described his headaches during a VA examination on July 19, 2000. (AR 827.) Her review of his medical records revealed consistent reporting of the frequency and severity of symptoms over time, but she noted Petitioner reported increased headache frequency to the point that he was experiencing three to four migraines per month. (AR 828.) Dr. Jackson charted that Petitioner was using all nine of the Sumatriptan (Imitrex) he was prescribed each month. (AR 828.)

Petitioner testified at the hearing regarding his migraine symptoms. (AR 59.) He stated that they started with a blurred spot of vision, and despite taking Sumatriptan, he

had to go home and lay in a dark room. (AR 59.) Petitioner testified also that he experienced nausea and vomiting with his migraines and that these symptoms lasted the rest of the day. (AR 59.)

The VA disability rating assigned Petitioner a 50% evaluation for his migraine type headaches based upon "very frequent completely prostrating and prolonged attacks productive of severe economic inadaptability. Additional symptom(s) include: Characteristic prostrating attacks occurring on the average once a month over last several months." (AR 223.) The 50% rating was the "highest schedular evaluation allowed under the law for migraine." (AR 223.)

Presented with such evidence, the ALJ's failure to discuss whether Petitioner's migraine headaches met or equaled Listing 11.02 constitutes legal error. *See Rader*, 2018 WL 4087988 at *7. Petitioner provided medical evidence of a severe impairment. He offered evidence concerning the type of headache, frequency, duration of symptoms, and after-effect of his headaches. The ALJ did not make any findings, contrary to the directive in the POMS and the Regulations, as to the nature and extent of Petitioner's migraine symptoms, and whether they met the requirements of Listing 11.02.

Contrary to Respondent's argument, Petitioner is not shifting the burden of proof under the facts of this case. Under *Lewis*, a claimant is required to offer a theory, plausible or otherwise, when alleging that the combined effects of multiple impairments are medically equivalent to a listed impairment. *Lewis*, 236 F.3d at 514. Here, in contrast, Petitioner argues that one impairment—migraines—met the requirements for a listed

impairment, and for which the POMS manual expressly provided an example. *See Rader*, 2018 WL 4087988 at *7. It was therefore error for the ALJ to fail to discuss Listing 11.02 based upon the medical evidence of record.

Respondent makes several other arguments why the ALJ's failure to consider Listing 11.02 was not in error, citing the minimal treatment received by Petitioner for the headaches;[7] the VA rating giving only a 50% disability rating attributable to his headaches;[8] and that Petitioner was able to work for a period of time.[9] Respondent argues that, from this evidence, the Court can reasonably infer that Petitioner's migraines did not meet a listing. However, none of these arguments address the medical requirements of Listing 11.02. Further, the Court may not review reasons proffered by Respondent upon which the ALJ did not rely. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). And finally, Respondent raises arguments more appropriately considered in the context of the ALJ's assessment of Petitioner's credibility, which the Court addresses below.

The Court therefore finds the ALJ erred by failing to assess whether Petitioner's migraines met the requirements of Listing 11.02.

---

[7] Respondent fails to offer evidence contradicting Petitioner's treatment history, discussed above, or to offer evidence indicating Respondent failed to comply with recommended treatment. The Court discusses this shortcoming later in this decision.

[8] Respondent does not mention that the 50% disability rating the VA attributed to Petitioner's migraine headaches was the "highest schedular evaluation allowed under the law for migraine." (AR 223.)

[9] Respondent fails to address or contest the ALJ's determination that Petitioner's return to work in 2015 constituted an unsuccessful work attempt.

**2.      VA Rating**

Petitioner argues the ALJ erred because the three reasons he gave to discredit the VA disability rating were not persuasive, specific, or valid. Specifically, Petitioner asserts the ALJ's reasons for discounting the rating fell afoul of *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002), and *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 695 (9th Cir. 2009).

"[T]he ALJ must consider the VA's finding in reaching his decision and the ALJ must ordinarily give great weight to a VA determination of disability." *McLeod v. Astrue*, 640 F.3d 881, 886 (9th Cir. 2011) (internal quotation marks omitted) (quoting *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002)). "Simply mentioning the existence of a VA rating in the ALJ's decision is not enough." *Luther v. Berryhill*, 891 F.3d 872, 877 (9th Cir. 2018). And, an ALJ may only "give less weight to a VA disability rating if he gives persuasive, specific, valid reasons for doing so that are supported by the record." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 695 (9th Cir. 2009) (quoting *McCartey*, 298 F.3d at 1076).

Respondent concedes that the first reason given by the ALJ—that the VA uses different disability standards—is legally insufficient under *McCartey*. However, Respondent contends the second reason for discounting the VA rating—that the rating infringes upon an issue reserved to the Commissioner—is persuasive, specific, and valid. The Court disagrees. There is no difference between reasons one and two. Both are perfunctory statements that merely set forth general principles. *See Valentine*, 574 F.3d at

695 ("Insofar as the ALJ distinguished the VA's disability rating on the general ground that the VA and SSA disability inquiries are different, her analysis fell afoul of *McCartey*."). Much more specific reasoning is necessary. *See Vardaman v. Saul*, 772 F. App'x 606, 607 n.1 (9th Cir. 2019) (finding ALJ's rejection of VA rating insufficient when ALJ reasoned only that the VA used different standards and the VA determination was not binding upon the SSA).[10]

That leaves reason number three. The ALJ stated the VA disability rating did not provide any functional limitations. However, a review of the same indicates otherwise, and Respondent did not direct the Court to contrary support in the record. *See* Respondent's Brief at 9. (Dkt. 15 at 9.)

Prior to the VA's issuance of its disability rating, Dr. Keri Jackson conducted a thorough examination of Petitioner's thoracolumbar spine (back) conditions, concluding Petitioner had "functional loss or functional impairment of the thoracolumbar spine," with "abnormal or outside of normal" range of motion. (AR 818-820.) Specifically, Dr. Jackson commented that Petitioner's loss of forward flexion inhibited performance of

---

[10] Both parties cited to 20 C.F.R. § 404.1404, which sets forth how the SSA will consider disability determinations by other agencies. The regulation was amended effective March 27, 2017. In claims filed on or after March 27, 2017, the SSA "will not provide any analysis" in its determination or decision about a decision made by any other governmental agency about whether the claimant is disabled. 20 C.F.R. § 404.1504 (effective March 27, 2017.) Prior to March 27, 2017, 20 C.F.R. § 404.1504 states that a determination by another agency that the claimant is disabled "is not binding" on the SSA. 20 C.F.R. § 404.1504 (effective until March 27, 2017.) Here, the prior rule governs, *Valentine* applies, and therefore *Vardaman's* reasoning is persuasive authority for the Court to consider in rejecting reasons one and two provided by ALJ for discrediting the VA disability determination. Respondent did not argue to the contrary.

activities that required such ability. (AR 820.) Dr. Jackson noted also that Petitioner evidenced pain with weight bearing, exhibited in the lumbar musculature. (AR 820.) She found that, based upon her examination, Petitioner's pain presentation was "medically consistent with" Petitioner's statements "describing functional loss." (AR 821.)

Next, Dr. Jackson assessed Petitioner's pain and its effect upon Petitioner's functional ability with repeated movement over a period of time. (AR 821.) She concluded Petitioner was unable to perform more than minimal household care activities due to increase in pain and limited tolerance for continued weightbearing activity until after a period of rest. (AR 821.) Dr. Jackson's examination findings also revealed Petitioner had muscle spasms and guarding of the thoracolumbar spine (back) resulting in abnormal gait or abnormal spinal contour. (AR 821.)

Dr. Jackson assessed normal strength in the areas of hip flexion, knee extension, ankle plantar flexion, ankle dorsiflexion, and great toe extension. (AR 822.) Thus, she concluded Petitioner did not have muscle atrophy. However, Dr. Jackson's sensory examination revealed Petitioner had decreased sensation to light touch in his right lower extremity (lower leg, ankle, foot, and toes), and a positive straight leg raise test on the right. (AR 823.) Dr. Jackson concluded Petitioner exhibited mild pain symptoms of radiculopathy in both his lower extremities, and paresthesia and numbness in his right lower extremity. (AR 823-824.) She concluded also that Petitioner had episodes of bed rest "having a total duration of at least six weeks during the past 12 months" as a result of his degenerative disc disease symptoms. (AR 824.)

Dr. Jackson concluded Petitioner's condition rendered him "unable to acquire or maintain gainful employment in a competitive workforce. He has very limited activity tolerance despite daily narcotics and gabapentin therapy. His condition precludes any occupational activities that require sustained work activity beyond a few hours a day. He has no capacity for any repetitive lifting, carrying, pulling, pushing, stooping, crawling or squatting. He is able to sit, stand or walk for short periods of time but not for a cumulative time of more than 3 or 4 hours at most in a given work day." (AR 826.) The VA disability determination incorporated Dr. Jackson's findings in connection with the assessment of functional loss exhibited in the thoracolumbar spine. (AR 224-225.)

Based upon the above, and contrary to the ALJ's evaluation and Respondent's argument, the evidence of record establishes Dr. Jackson, and in turn the final VA disability determination, incorporated specific functional limitations. Dr. Jackson discussed functional limitations in her report of examination findings, and the VA disability rating relied upon the same. Thus, the Court finds the ALJ did not offer persuasive, specific, or valid reasons supported by substantial evidence in the record for giving the VA disability determination little weight.

**3.      Whether the ALJ Improperly Weighed the Medical Opinion Evidence**

Petitioner asserts the ALJ failed to provide legally sufficient reasons for rejecting Dr. Jackson's opinion. Respondent argues the ALJ's reasons met the clear and convincing standard. Respondent's Brief at 4. (Dkt. 15 at 4.)[11] The Court concludes the reasons proffered by the ALJ for affording Dr. Jackson's opinion little weight are neither clear nor convincing reasons supported by substantial evidence. In fact, the record contradicts them.

In social security cases, there are three types of medical opinions: "those from treating physicians, examining physicians, and non-examining physicians." *Valentine v. Comm'r*, 574 F.3d 685, 692 (9th Cir. 2009) (citation omitted). ALJs generally give more weight to medical opinions from treating physicians, "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations...." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Thus, the opinion of a treating source is generally given more weight than the opinion of a doctor who does not treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).

---

[11] Respondent concedes that Dr. Jackson's opinion was uncontradicted. Therefore, the ALJ must proffer reasons that meet the clear and convincing standard and not the more lenient "specific and legitimate" standard applicable when a physician's opinion is contradicted by another doctor. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

However, the opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician. *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir. 1984). Although the ALJ is not bound by expert medical opinion on the issue of disability, he must give clear and convincing reasons supported by substantial evidence for rejecting such an opinion where it is uncontradicted. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005); *Gallant*, 753 F.2d at 1454 (citing *Montijo v. Secretary of Health & Human Services*, 729 F.2d 599, 601 (9th Cir.1984); *Rhodes v. Schweiker*, 660 F.2d 722, 723 (9th Cir.1981)). But, the ALJ "need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

Here, the consistency of the three examining physicians' opinions warrants additional consideration. *Orn v. Astrue*, 495 F.3d 625, 634 (9th Cir. 2007). *See also Smolen v. Chater*, 80 F.3d 1273, 1286 (9th Cir. 1996) (uncontroverted opinions of two treating physicians were entitled to "great weight.") All three examining physicians (Jackson, Blair and O'Brien) offered similar opinions based upon independent examinations and reviews of Petitioner's medical records. (AR 21-22.) Yet, the ALJ treated the opinions differently. For instance, the ALJ gave Dr. Jackson's opinion little weight, and Dr. O'Brien's opinion some weight, despite both physicians recommending

similar restrictions related to lifting, bending, and overhead reaching. (AR 21.)[12]

Turning to the specific reasons the ALJ gave for rejecting Dr. Jackson's opinion of Petitioner's functional capacity, the first reason was that the opinion overstated Petitioner's limitations. The ALJ concluded that neither physical examination findings nor diagnostic imaging results supported Dr. Jackson's recommended severe physical limitations. Upon review of the record, however, the Court finds the medical evidence does not support the ALJ's conclusion. The ALJ cites to select records from February 27, 2013, the last quarter of 2016, and to May 18, 2016. (AR 20.) In doing so, the ALJ failed to discuss Petitioner's medical record as a whole, which spanned from December 8, 2011, to February 14, 2017. When reviewed against the entirety of the medical records, the select few chosen by the ALJ do not support the ALJ's conclusions regarding "predominantly mild physical findings" and "mild" findings upon MRI.

For instance, the ALJ states that Dr. Blair's physical examination of Petitioner on February 27, 2013, revealed normal gait, full range of motion of the cervical spine, and mild tenderness to palpitation. (AR 20.) Dr. Blair's examination notes do state this. However, the ALJ failed to address the underlying diagnostic imaging results from that

---

[12] Respondent argues Petitioner's reliance upon the discounted opinions of Drs. Blair and O'Brien to bolster his argument that the ALJ erred in rejecting Dr. Jackson's opinion is flawed. Respondent failed to address, however, the impact of three similar opinions finding Petitioner significantly limited in his capacity to tolerate work related activities. Respondent argues also that Petitioner's failure to challenge the ALJ's assessment of Drs. Blair's and O'Brien's opinions results in waiver of that argument on appeal. Nonetheless, to the extent the ALJ discredited Drs. Blair's and O'Brien's opinions on the basis of unremarkable examination findings and diagnostic imaging results, which were the same reasons he gave for discrediting Dr. Jackson's opinion, the ALJ's conclusions must be revisited, as explained below.

**MEMORANDUM DECISION AND ORDER - 24**

same period upon which Dr. Blair relied.[13]

The diagnostic imaging results relied upon by Dr. Blair revealed four bulging discs in Petitioner's back and neck, as well as foraminal narrowing. (AR 920.) Dr. Blair diagnosed disc bulge with secondary foraminal stenosis of the cervical spine. (AR 923.) He indicated Petitioner would require a series of epidural steroid injections for his cervical foraminal narrowing, and that continued narcotic pain medication would be necessary to treat Petitioner's lumbar spine pain symptoms status post L5-S1 fusion. (AR 924.) More comprehensive physical examinations by other practitioners[14] in May of 2013 revealed Petitioner had decreased sensation in the lower left extremity, the C7 dermatome,[15] and left arm; and cervical range of motion revealed pain with extension, with limited range of motion. (AR 303, 312.) Diagnostic imaging results for both his lumbar and cervical spine on May 15, 2013, revealed a disc bulge at the L4-5 contacting the left L4 nerve root, and a disc bulge at C6-7, consistent with Petitioner's pain pattern following the C7 dermatome. (AR 303.)

The ALJ failed to address diagnostic imaging results dated October 15, 2014,

---

[13] While Respondent asserts Petitioner did not challenge the ALJ's reasons for discounting the opinions of Drs. Blair and O'Brien, Respondent failed to address the underlying findings of their physical examinations, or the diagnostic imaging results upon which their physical findings were based. Both Drs. Blair and O'Brien described similar physical findings upon examination – notably pain with range of motion.

[14] Petitioner had several physicians treating him as part of his care team at the VA. Who examined him on what date is not relevant, given none of these treating physicians rendered an opinion in this matter.

[15] A dermatome is "[t]he area of skin supplied by cutaneous branches of a single cranial or spinal nerve; neighboring dermatomes can overlap. 239600 *dermatome*, STEDMANS MEDICAL DICTIONARY 239600.

which revealed "significantly abnormal" results and "significant disease, especially at the L4-5 level on the left." (AR 463.) MRI results were consistent with Petitioner's reports on October 14, 2014, of low back pain, with "radiation into right ant/lateral to post calf to foot tingling." (AR 464.) In February of 2015, after a diagnosis of adjacent segment lateral recess stenosis with predominance of right L4 radiculitis, (AR 907), Petitioner underwent spinal injections which he reported on March 27, 2015, were not helpful with controlling his low back pain. (AR 913.) Petitioner was later diagnosed with segment failure above his prior L5-S1 fusion, requiring lumbar reconstruction utilizing internal fixation at L4-5, circumferential arthrodesis of the lumbar spine at level L4-L5, and decompression, which surgery was performed on July 21, 2015. (AR 668.) Surgical exploration revealed "severe facet arthropathy at L4-L5 and hypermobility." (AR 669.)

The ALJ noted correctly that, at Petitioner's six week post-operative follow up appointment with his spine surgeon on August 31, 2015, Petitioner reportedly was doing well and had a non-antalgic gait. (AR 20, 682-683.) However, at his next appointment on October 12, 2015, Petitioner reported low back pain, and had evidence of a slightly antalgic gait and station. (AR 685.) While Petitioner's lumbar spine x-rays dated October 12, 2015, showed a stable fusion, (AR 20, 686), Petitioner continued to experience pain for which narcotic medications were prescribed, (AR 914). Dr. Jackson's physical examination, conducted on August 2, 2016, and discussed above, documented loss of forward flexion, pain with weight bearing, abnormal range of motion, decreased sensation in his left lower extremity, symptoms of radiculopathy, and paresthesia and

numbness. (AR 821-824.) Dr. O'Brien's examination on July 27, 2016, similarly revealed painful movements in both the lumbar and cervical areas, limited cervical range of motion, and limited lumbar range of motion due to pain. (AR 931-933.)

Next, with regard to the ALJ's conclusion concerning Petitioner's cervical and bilateral shoulder pain, the ALJ made similar errors. Notably, the ALJ presented a list of medical records and subjective complaints on certain dates, (AR 20), but failed to articulate how those medical records constituted evidence of "mild" physical examination findings and mild to moderate objective findings as they related to Petitioner's bilateral shoulder and cervical pain. (AR 19-20.) Upon review of the record, the Court finds the ALJ's conclusion is not supported by substantial evidence.

With regard to Petitioner's bilateral shoulder pain complaints, Petitioner consistently complained of pain over the course of several years. (AR 328.) An MRI of his right shoulder on or about April 10, 2013, demonstrated osteoarthritis, tendonitis, and shoulder impingement syndrome. (AR 330.) Steroid injections provided no relief. (AR 330, 331.) An x-ray of Petitioner's left shoulder, taken on May 18, 2016, revealed ossific focus at the inferior glenoid likely related to a prior fracture. (AR 726.) Findings were otherwise normal. However, Petitioner complained of radiating pain into his bilateral upper extremities, likely originating from his cervical spine, with right side pain greater than the left. (AR 921.)

He underwent right shoulder arthroscopy, debridement of a partial-thickness rotator cuff tear, long head biceps tendon and subacromial decompression, and distal

clavicle resection in June of 2013. (AR 336.) A later MRI of his right shoulder on June 21, 2016, showed moderate glenohumeral joint osteoarthritis with humeral head/neck junction osteophytosis and irregular partial thickness cartilage loss of the humeral joint, and degenerative fraying/mild tearing of the glenoid labrum. (AR 831.) He was referred to a shoulder specialist. On June 22, 2016, an orthopedist examined Petitioner's right shoulder, which exhibited pain and tenderness, good strength, positive lift off test, and a "gentle clunk" coming from the posterior shoulder. (AR 834.)

On January 13, 2017, Petitioner complained of worsening pain in his cervical spine and right shoulder. (AR 783.) A review of the most recent MRI study at that visit "showed degenerative changes of the glenohumeral joint," and a "degenerative labral tear." (AR 783-784.) The examining physician explained that Petitioner's complaints of paresthesia affecting the right upper extremity "were concerning," requiring further cervical workup. (AR 784.) An MRI of Petitioner's cervical spine, taken on February 14, 2017, revealed mild to moderate cervical disc degeneration with C2-C7 posterior bulges/ridges and foraminal narrowing that appeared most severe on the right at C3-4. (AR 917-918.) At the C3-4 level, the MRI showed evidence of encroachment on the right lateral recess and mild right anterior cord flattening, with moderate to severe right and mild left foraminal narrowing. (AR 917.)

The Court finds the ALJ did not present clear and convincing reasons supported by substantial evidence based upon the record as a whole for his conclusion that the medical records contained mostly mild physical and objective findings. The Court's

review of the same, discussed above, reveals otherwise.

Turning to the ALJ's second reason given for rejecting Dr. Jackson's opinion—Petitioner's daily activities—the Court finds substantial evidence does not support the ALJ's reasoning. Respondent argues the ALJ reasonably concluded that Petitioner's activities, which consisted of visiting friends, preparing simple meals, and doing some household chores, were inconsistent with the extreme physical limitations Dr. Jackson assessed, in which she limited Petitioner's physical activities to four hours each day. (AR 19, 21, 71-76.) Petitioner, on the other hand, contends that his activities were entirely consistent with Dr. Jackson's opinion that Petitioner could sit, stand, and walk for limited periods, but not more than three or four hours each day. (AR 21.)

For instance, Petitioner testified about his work attempt at the plastics plant in 2015. (AR 49-50.) He started with a full time schedule, but because of lower back pain, he progressed to part time. (AR 50.) He testified that it "got to a point where I couldn't even complete a full day," and left after four hours of work. (AR 50.) As for his daily routine, he testified that, if he sits or stands for too long without moving or stretching, he stiffens up. (AR 51.) He often spends up to an hour every day lying down. (AR 52.) He can walk, but only a few blocks, because despite the back surgery in 2015, he still experiences numbness and tingling in his lower extremities and feet, as well as back pain. (AR 53-54.)

Petitioner's testimony about a typical day was consistent also with Dr. Jackson's physical assessment. For instance, Petitioner may spend up to an hour cleaning his guns;

he can fix himself simple meals; he'll visit his friend's tattoo parlor for a few hours; and walk up to twenty minutes twice a week in the evenings. (AR 70-75, 80-81.) But, after activities away from the house, such as spending time at his friend's tattoo business, he often returns home to lie down in the afternoons. (AR 81.) Petitioner is able to drive to the store, and he drives every other weekend four hours from his house to Idaho Falls to visit his children. (AR 75.) However, during the drive to Idaho Falls, he stops several times to stretch. (AR 81.)

The ALJ provided no explanation to support his conclusion that Petitioner's activities were inconsistent with Dr. Jackson's assessment. A review of Petitioner's testimony, on the other hand, reveals that while the ALJ correctly described Petitioner's activities, he omitted discussion of the duration of his activities. Petitioner testified that activities involving prolonged standing, walking, or siting were limited to activity up to four hours, and often were punctuated by rest. As such, Petitioner's testimony was consistent with the limitations Dr. Jackson described, and the ALJ offered no plausible theory or evidence to the contrary.

In sum, the Court finds that substantial evidence does not support the ALJ's reasons for affording Dr. Jackson's opinion little weight.

## 4.    Credibility

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ's findings must be supported by specific, cogent reasons. *Reddick*, 157 F.3d at

722. If a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints of pain based solely on lack of medical evidence. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). *See also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (holding that an ALJ may not discredit a claimant's subjective testimony on the basis that there is no objective medical evidence that supports the testimony).

The ALJ must first determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). The claimant is not required to show that his impairment could reasonably be expected to cause the severity of the symptom he has alleged; he need only show that it could reasonably have caused some degree of the symptom. *Id.* Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof. *Id.*

If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of his symptoms only by offering specific, clear and convincing reasons for doing so, which are supported by substantial evidence in the record. *Burch*, 400 F.3d at 680. This is not an easy requirement to meet---the clear and convincing standard is the most demanding required in Social Security cases. *Garrison*, 759 F.3d at 1014–15 (citations omitted) (internal quotation marks omitted).

In evaluating credibility, the ALJ may engage in "ordinary techniques of credibility evaluation," including considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct, claimant's daily activities, claimant's work record, and testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which claimant complains. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012); *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). Also, the ALJ may consider the location, duration and frequency of symptoms; factors that precipitate and aggravate those symptoms; the amount and side effects of medications; and treatment measures taken by the claimant to alleviate those symptoms. *See* Soc. Sec. Ruling 96-7p.

Here, the ALJ discounted Petitioner's symptom testimony for four reasons: (1) Petitioner's complaints of pain were inconsistent with his activity level; (2) Petitioner's symptoms improved after surgery; (3) Petitioner received minimal treatment for his migraines; and (4) Petitioner's complaints of pain were inconsistent with treatment records. The Court finds the ALJ's proffered reasons are not supported by substantial evidence based upon the record as a whole.

If a claimant engages in numerous activities involving skills that could be transferred to the workplace, the ALJ may discredit the claimant's allegations upon making specific findings relating to those activities. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). The ALJ cited Petitioner's ability to perform personal hygiene and household chores, such as cleaning dishes and laundry, and preparing simple meals. (AR

19.) The ALJ noted also that Petitioner testified he worked on cleaning his guns, visited his friend's tattoo shop two to three days each week, walked up to thirty minutes up to two times each week for exercise, and drove four hours every other weekend to visit his children. (AR 19.) However, as discussed in the previous section, prolonged activities involving siting, walking or standing did not last longer than four hours, and were punctuated by rest or stretching breaks during the driving activity.

Petitioner testified also that he suffered a migraine up to once a week. (AR 66.) Once migraine symptoms begin, Petitioner testified that he suffers impaired vision, nausea, and vomiting, despite taking Sumatriptan to ease the severity of the symptoms. (AR 59-60.) Petitioner remains in bed the rest of the day to alleviate his migraine symptoms. (AR 59.)

The ALJ's finding that Petitioner's activities demonstrate an ability to work is unsupported by the record. The activities Petitioner described during his testimony were fully consistent with the limitations assigned by Dr. Jackson and Dr. O'Brien with regard to his physical capacity to tolerate sustained sitting, standing and walking, and absences from work due to migraine headaches. His activities were punctuated with rest, and he described being unable to sustain prolonged physical activity due to pain. Petitioner attempted full time work, but was unable to sustain a full eight hour day.

"[D]isability claimants should not be penalized for attempting to lead normal lives in the face of their limitations. *See, e.g., Cohen v. Secretary of Dept. of Health & Human Servs.*, 964 F.2d at 530–31 (6th Cir.1992) (ruling that a claimant should not be penalized

for attempting to maintain some sense of normalcy in her life); *Cooper v. Bowen*, 815

F.2d 557, 561 (9th Cir. 1987) (noting that a disability claimant need not "vegetate in a

dark room" in order to be deemed eligible for benefits). *See also Fair v. Bowen*, 885 F.2d

597, 603 (9th Cir. 1989) ("Many home activities are not easily transferable to...the more

grueling environment of the workplace, where it might be impossible to periodically rest

or take medication."). "Only if the level of activity were inconsistent with claimant's

claimed limitations would these activities have any bearing on Claimant's credibility.

*Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Here, the ALJ did not explain how

Petitioner's activities were inconsistent with his claimed limitations—namely his

inability to tolerate an eight hour work day of prolonged sitting, standing, or walking, and

missed work due to migraines.

Next, the ALJ found Petitioner less than fully credible, because "medical records

reveal improvement after surgery." Petitioner had two surgeries (shoulder and lumbar),

but it appears the ALJ referred to Petitioner's lumbar reconstruction on July 21, 2015.

(AR 20.)[16] The evidence in the record indicates that Petitioner still suffered back pain

after surgery, as discussed above. These symptoms included bilateral lower extremity

pain and radiculopathy, documented by physical exams finding decreased sensation in his

left lower extremity. Further, the ALJ's proffered reason, which refers only to

Petitioner's lumbar surgery, fails to account for the worsening cervical spine symptoms,

---

[16] The ALJ noted Petitioner reported "doing well" one week post-lumbar fusion surgery.
(AR 20.)

**MEMORANDUM DECISION AND ORDER - 34**

or Petitioner's bilateral upper extremity pain. The Court therefore finds this reasoning is neither specific nor convincing, and not based upon the record as a whole, which documented not only lumbar, but cervical and bilateral upper and lower extremity limitations due to pain.

Next, an "unexplained, or inadequately explained, failure to seek treatment" may be the basis for an adverse credibility finding, *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007), as can conservative treatment. *See Parra v. Astrue*, 481 F.3d 742, 750–51 (9th Cir. 2007) (evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment). Here, the ALJ was critical of Petitioner because the "record is minimal in terms of migraine treatment," and Petitioner "received "minimal treatment from the VA" for migraines (AR 20.) The ALJ's finding that Petitioner's care was too conservative for a disabling condition is not supported by substantial evidence.

In making this finding, the ALJ provided no details or explanation as to how the treatment Petitioner did receive for his migraines supports the finding that Petitioner was not credible. Nor does the ALJ offer any suggestion as to what other type of treatment Petitioner should have sought. The medical records, in contrast, indicate Petitioner complained of severe migraine symptoms since 2000, and was prescribed Sumatriptan as an abortive medication. (AR 352, 408, 410.) VA evaluations consistently documented frequent headaches. (AR 828.) On July 17, 2014, Petitioner's migraine symptoms were treated with an occipital nerve block. (AR 410-411.) And, Dr. Jackson's medical records review indicated Petitioner used all of his prescribed Sumatriptan each month. (AR 828.)

Nowhere in his opinion does the ALJ suggest that Petitioner failed to follow the prescribed course of treatment he received for his migraine headaches from his various doctors, and nowhere in the records do physicians suggest that there were more aggressive forms of treatment available to or appropriate for Petitioner to relieve his migraine symptoms. There is no conflicting evidence in the medical record, after years of treatment, to indicate Petitioner did not in fact suffer from severe migraine headaches. Throughout the course of his treatment, Petitioner was prescribed Imitrex (Sumatriptan) and narcotic medication for his pain. The ALJ does not state or suggest how Petitioner's severe migraines should have been treated, or how that hypothetically sufficient treatment differs from the treatment Petitioner actually received. Petitioner's failure to pursue additional treatment, when nothing in the record indicates what that could or should have been, is not a sufficiently clear and convincing reason to support the ALJ's adverse credibility finding.

The ALJ may also consider whether the alleged symptoms are consistent with the medical evidence. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007). But, an ALJ may not reject a claimant's subjective pain or symptom testimony simply because the alleged severity of the pain or symptoms is not supported by objective medical evidence. *See Reddick*, 157 F.3d at 722.

Here, the ALJ made no specific findings in support of his conclusion other than a vague comment that Petitioner's claims were not consistent with the "mild to moderately severe physical findings." Yet, as discussed above, the MRIs show moderate to severe

degenerative disc disease of the cervical spine resulting in radiculopathy and paresthesia. Petitioner also underwent a lumbar reconstruction surgery to repair a prior failed fusion. Surgical exploration revealed severe disease. Symptoms after lumbar surgery remained, such as pain, limited and painful range of motion of the lumbar spine, radiculopathy, and numbness. Similarly, an MRI of Petitioner's cervical spine revealed moderately severe symptoms causing pain, numbness, and paresthesia. The ALJ did not point to "specific facts in the record which demonstrate that [Petitioner] was in less pain that [he] claims." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Like the ALJ, Respondent's argument that some records showed normal function and strength ignores other evidence in the record which shows otherwise. The ALJ did not discuss these findings when he rejected Petitioner's subjective complaints of pain.

Based upon the above, the Court finds that the ALJ provided insufficient reasons for discounting Petitioner's credibility, and that his findings were unsupported by substantial evidence based on the record as a whole.

**5.     RFC Assessment**

Because the ALJ did not provide clear and convincing reasons for excluding Petitioner's cervical and lumbar pain and headache symptoms from his determination of Petitioner's RFC, substantial evidence does not support the assessment. *See Robbins*, 466 F.3d at 883 ("In determining a claimant's RFC, ... '[c]areful consideration' [must] be given to any evidence about symptoms 'because subjective descriptions may indicate more severe limitations or restrictions than can be shown by medical evidence alone.'")

(quoting S.S.R. 96–8p at 5, 1996 WL 374184. Nor does substantial evidence support the ALJ's step-five determination, since it was based on an erroneous RFC assessment. *See Gallant*, 753 F.2d at 1456 ("Because ... the ALJ had no clear or convincing reasons for rejecting [claimant's allegations of persistent disabling pain], claimant's pain should have formed a part of the ALJ's question to the expert."); *see also id*. ("A hypothetical question should set out all of the claimant's impairments.").

The ALJ's RFC finding was not supported by substantial evidence, as it failed to account for the effects of Petitioner's pain after prolonged sitting, standing, and walking, and absences due to migraine headaches, which would impact Petitioner's ability to function competitively in the workplace.

## 6.     Remand for Calculation of Benefits

Petitioner argues the Court should remand for an immediate award of benefits. He contends that, if the VA rating, Dr. Jackson's opinion, and Petitioner's testimony were properly credited, Petitioner would be limited to working at most four hours per day and would miss multiple work days each month due to migraine headaches. Respondent argues there are evidentiary conflicts present in the record, citing Petitioner's improvement after surgery; daily activities; minimal treatment; and treatment records, as well as the opinions of the state agency reviewing physicians. Thus, Respondent contends remand for further proceedings, but without mandating an award of benefits, is appropriate.

Under the credit-as-true rule, a court may remand for an award of benefits when

all of the following conditions are met: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *See Garrison*, 759 F.3d at 1020.

Here, the ALJ incorporated the pain and other limitations testified to by Plaintiff in a hypothetical question posed to the vocational expert. He asked the vocational expert whether an individual who required more than the two 15-minute breaks normally allowed during a work shift, and more than the 30-60 minute break allowed at mid-shift, and who would miss more than two workdays in a typical month, would be able to maintain employment. (AR 87-88.) Although the ALJ later decided these limitations were not credible, the vocational expert's testimony establishes that, taking Petitioner's testimony and Dr. Jackson's opinions as true, Petitioner is disabled. The vocational expert testified that, if an employee required more breaks than typical and would miss more than two workdays each month, this would be "work preclusive." (AR 88.) *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1041 (9th Cir. 2007).

Further proceedings are unnecessary here because the ALJ did not provide a legally sufficient basis for rejecting the VA disability rating, Dr. Jackson's opinion, or Petitioner's testimony, all of which establish Petitioner is entitled to benefits. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1041 n.12 (9th Cir. 2007). The Court also rejects Respondent's

arguments cited in support of remand. A review of the record, as discussed above, revealed Petitioner did not improve after surgery; his activities were consistent with Dr. Jackson's limitations; he did not receive minimal treatment for his migraines, as no other treatment was identified other than abortive medications; and treatment records showed evidence of severe disease of the lumbar and cervical spine.

As for Respondent's final assertion that the state agency reviewing physician's opinions provide support for the ALJ's credibility assessment, the argument is without merit. The ALJ mentioned the opinions of Michael Dennis, Ph.D., and Barney Greenspan, Ph.D., who assessed Petitioner's mental limitations due to depression and anxiety, which they found not severe. (AR 21.) But the ALJ did not find Petitioner's depression and anxiety severe at step two. (AR 18.) Nor did Petitioner testify regarding disabling symptoms of depression and anxiety. And the VA disability rating, as well as Dr. Jackson's opinion, did not incorporate any mental health symptoms. In other words, there is no conflict to resolve.

## CONCLUSION

Based upon the above, the Court concludes the ALJ's decision that Petitioner is capable of performing full time work with limitations is not supported by substantial evidence. The ALJ did not provide legally sufficient reasons under the applicable standards for discounting the VA disability determination, Dr. Jackson's opinion, or Petitioner's credibility. Three examining physicians and the VA were of the opinion Petitioner could not work. The record as a whole supports Petitioner's testimony

concerning the extent of his pain. Because the vocational expert testified that Petitioner's pain and physical limitations would eliminate any potential employment, further proceedings are not necessary. The Court will therefore remand this matter for calculation and award of benefits.

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1)     Plaintiff's Petition for Review (Dkt. 1) is **GRANTED**.

2)     This action shall be **REMANDED** to the Commissioner for an award of benefits.

3)     This Remand shall be considered a "sentence four remand," consistent with 42 U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).

DATED: September 20, 2019

Honorable Candy W. Dale
United States Magistrate Judge